No. 111,801

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSH OHLMEIER and SARAH OHLMEIER,
*Appellees*,

v.

WHITNEY JONES,
*Appellant*.

SYLLABUS BY THE COURT

1.

A notice of appeal is premature if filed after a journal entry granting judgment for attorney fees is filed and lies dormant until the district court determines the actual amount of the attorney fees judgment.

2.

"A notice of appeal that complies with K.S.A. 60-2103(b)—filed after a judge of the district court announces a judgment to be entered, but before the actual entry of judgment—is effective as notice of appeal under K.S.A. 60-2103 if it identifies the judgment or part of the judgment from which the appeal is taken with sufficient certainty to inform all parties of the rulings to be reviewed on appeal." Supreme Court Rule 2.03(a) (2014 Kan. Ct. R. Annot. 12).

3.

K.S.A. 2014 Supp. 60-2006(a) provides the prevailing party the right to recover attorney fees in a suit involving recovery of property damages only in an automobile accident when the property damage loss is less than $15,000 and the adverse party failed

1

to offer settlement for an amount equal to or greater than the amount of the judgment obtained.

4.

When a statute fails to define a term, it is the court's obligation to apply the rules governing statutory interpretation.

5.

The phrase "property damages only" as used in K.S.A. 2014 Supp. 60-2006(a), does not include the diminished value loss associated with owning a vehicle involved in an automobile accident. Therefore, the statute does not provide for the prevailing parties to recover their attorney fees in this case.

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed October 16, 2015. Affirmed in part and reversed in part.

*J. Franklin Hummer*, of Shawnee Mission, for appellant.

*N. Russell Hazlewood* and *Jacob S. Graybill*, of Graybill & Hazlewood L.L.C., of Wichita, and *A. Scott Waddell*, of Waddell Law Firm LLC, of Kansas City, Missouri, for appellees.

Before SCHROEDER, P.J., GREEN, J., and JOHNSON, S.J.

SCHROEDER, J.: Josh and Sarah Ohlmeier obtained a judgment against Whitney Jones for the diminished value loss to their 2011 Chevrolet Traverse (Traverse) as a result of an automobile accident in the amount of $4,185 plus a judgment for their attorney fees in the amount of $15,440 pursuant to K.S.A. 2014 Supp. 60-2006. Jones appeals.

We affirm the judgment for diminished value loss but find we must reverse the judgment for attorney fees pursuant to K.S.A. 2014 Supp. 60-2006 as diminished value

2

loss does not qualify as "property damages only" under the statute to sustain the award of attorney fees. We affirm in part and reverse in part.

FACTS

This matter was tried to the district court. As the trial began, both parties stipulated to the admission of the Ohlmeiers' exhibits, including Mike Orton's expert report, Jones' exhibits, and the following facts:

"1.     The subject 2011 Chevrolet Traverse ('Traverse') was initially purchased as a rental on April 29, 2010.

"2.     The Traverse was sold to Superior Chevrolet at auction with 27,801 miles on October 24, 2011.

"3.     Plaintiffs purchased the Traverse as a certified pre-owned vehicle from Superior Chevrolet on November 17, 2011.

"4.     On March 12, 2012, Plaintiffs' Traverse was struck by Defendant and/or a vehicle driven by Defendant (a 1995 Buick LeSabre) at the intersection of 67th Street and southbound I-35 in Johnson County, Kansas.

"5.     At the time of the collision, the Traverse had 36,138 miles on it.

"6.     Plaintiffs' Traverse was repaired by Superior Chevrolet, a repair facility authorized by General Motors.

"7.     The repairs to the Traverse were initially paid by Plaintiffs' insurer Farmers Insurance.

"8.     On April 20, 2012, Farmers submitted to Defendant's insurer, Key Insurance Company, its reimbursement request for repairs to Plaintiffs' vehicle ($7,192.01) and for a rental vehicle for Plaintiffs ($849.92).

"9.     On April 25, 2012, Key Insurance Company made payment to Farmers Insurance for the Traverse's repairs and for the car rental.

"10.     On May 9, 2012, Plaintiff Sarah Ohlmeier sent a demand for diminished value to Key in the amount of $6,400.00.

3

"11.     On October 12, 2012, Plaintiffs[ ] sent a certified demand through their attorney A. Scott Waddell to Defendant for diminished value in the amount of $4,185.00 and faxed a copy of the same to Key.

"12.     On October 17, 2012, Defendant responded to Plaintiffs' counsel that she received the October 12, 2012 demand.

"13.     On October 25, 2012, Key acknowledged receipt of the October 12, 2012 demand, made no offer, but requested supporting documentation to support the claim for $4,185.00 in diminished value.

"14.     On October 25, 2012, Plaintiffs' counsel forwarded supporting documentation to Key per Key's October 25, 2012 request.

"15.     On November 7, 2012, Key made an offer of $750.00 to settle Plaintiffs' claim for diminished value.

"16.     On January 14, 2013, Plaintiffs' Petition for Damages against Defendant was filed.

"17.     On February 7, 2013, Key made a settlement offer pursuant to K.S.A. 60-2006 to settle all of Plaintiffs' claimed property damages in the amount of $2,092.50.

"18.     On the date of trial, March 25, 2014, Defendant admitted liability and withdrew the defense of insufficient service of process as Defendant stopped communicating with her counsel and did not appear at trial to offer testimony regarding those issues."

The Ohlmeiers based their case on the testimony and exhibits from their expert witness, Mike Orton. Prior to his testimony, Jones objected to Orton's qualifications as an expert witness and asked the district court for an opportunity to voir dire Orton on his qualifications. The district court denied Jones' request and instead offered her the opportunity to cross-examine Orton. The district court stated it could and would make its determination on whether Orton was an expert following cross-examination. The district court allowed Jones a standing objection as to foundation.

Orton testified he operated a collision repair business and consulted on diminished value. According to Orton, diminished value is the sudden and immediate loss of value due to the vehicle being in an accident. It is calculated by determining "[t]he value of the

4

vehicle immediately before the accident, less the value of the vehicle immediately after the accident, unless repairs are contemplated, which restore a portion in that value. The remaining residual loss is the diminution of value." Orton testified that even if fully repaired, the Traverse's diminished value loss as a result of the March 12, 2012, accident equaled $5,239. Despite Orton's testimony, both parties agreed that if the Ohlmeiers were entitled to diminished value loss, they were limited to the amount requested in the pretrial order of $4,185.

Under cross-examination, Orton admitted he did not know the Traverse had previously been a rental vehicle and thus did not take into account what effect that would have on the value of the Traverse in calculating the current amount claimed for the diminished value loss. Orton admitted he did not have any formal education in the psychology of car buying, how to interpret statistics, or how to survey the buying public. During Orton's cross-examination, Jones introduced into evidence a Carfax report showing a diminished value loss of $140. Following Orton's testimony, the district court found Jones' objections went to the weight of Orton's testimony and not its admissibility. The district court ruled Orton qualified as an expert, and his testimony was admissible.

Sarah testified she arrived at her $4,185 demand by getting trade-in values from three different sources and subtracting the trade-in value from the Kelley Blue Book value which she assumed was the market value before the accident. Leonard Gregson, Vice President of claims with Key, testified for the defense. While he admitted there was a stigma attached to vehicles that have been in an accident, he testified to an alternative means of calculating the diminished value loss, the Rule 17c test, which sets the diminished value loss at 10% of the preaccident value.

At the conclusion of the trial, the district court asked Jones to submit a memorandum setting out her value for the diminished value loss suffered by the Traverse. In her memorandum, Jones argues the district court should use either the Carfax report

which "took into account the prior history of our accident, the mileage and the prior ownership by a California rental agency and came up with a reduction of $140 . . . based on millions of transactions, and [its] approach has withstood the scrutiny of millions of potential used car buyers successfully," or the district court should use the Rule 17c test which was developed by State Farm in a Georgia class action case to deal with diminished value loss. The 17c test gave a diminished value loss of $1,273.20.

On April 7, 2014, the district court filed its journal entry in which it awarded $4,185 in diminished value loss and determined the Ohlmeiers were entitled to attorney fees. Over Jones' objection, the district court found that diminished value loss was "property damage" and the Ohlmeiers were entitled to attorney fees under K.S.A. 2013 Supp. 60-2006. The district court ordered the Ohlmeiers to file a motion for attorney fees with the court. Jones timely filed a motion to alter or amend the judgment. The district court denied Jones' motion on May 1, 2014. Jones filed a notice of appeal of the April 7, 2014, journal entry and all subsequent adverse rulings on May 2, 2014. A journal entry was filed on May 9, 2014, in which the district court awarded the Ohlmeiers $15,440 in attorney fees.

ANALYSIS

*Sufficiency of the Evidence*

*Was Orton qualified as an expert?*

On appeal, Jones argues the evidence was insufficient to support the verdict because the district court erred when it qualified Orton as an expert witness. Jones argues the district court erred in qualifying Orton as an expert because Orton did not have any "'special knowledge, skill, experience[,] or training' in the field of determining [the]

6

amount of diminished value." Orton was also an admitted consumer advocate for increasing the awareness of diminished value loss.

An appellate court must apply the statutory law on evidence as it was at the time of the challenged evidentiary ruling. *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013). Multiple inquiries are involved when the admission or exclusion of evidence is challenged on appeal.

At the time of the trial, the admission of expert witness testimony was controlled by K.S.A. 60-456(b) which stated:

> "If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

An appellate court reviews the admission or exclusion of expert testimony under K.S.A. 60-456 for an abuse of discretion. See *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 70, 274 P.3d 609 (2012). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). To testify as an expert, the witness must be skilled or experienced in the profession to which the subject of his or her testimony relates. *State v. Gaona,* 293 Kan. 930, 948, 270 P.3d 1165 (2012); see also K.S.A. 60-456 (generally governing the admissibility of lay and expert opinion testimony). An expert witness is not allowed to testify about the weight or credibility of evidence, for those matters are strictly within the province of the jury. *State v. Stieben*, 292 Kan. 533, 538, 256 P.3d 796 (2011).

7

At trial, Orton testified he had an associate degree in automotive technology, worked in the vehicle repair industry since 1973, and for the last 7 years he has advised on diminished value loss with Collision Consulting of Missouri. In the last 10 years he has prepared approximately 50 formal reports evaluating diminished value loss. It was not arbitrary, fanciful, unreasonable, based on an error of law, or based on an error of fact for the district court to determine Orton was skilled or experienced in evaluating a vehicle's diminished value loss. Simply because Orton is a consumer advocate, does not mean he is not qualified to be an expert witness.

Jones also argues for the first time on appeal the district court erred in qualifying Orton as an expert witness because Orton's testimony failed the *Frye* test. Jones argues the Ohlmeiers presented no evidence Orton's approach to calculating the amount of diminished value loss was generally accepted as reliable within Orton's particular scientific field.

> "If expert opinion testimony based on scientific methods or procedures is offered as evidence in Kansas state courts, the offering party must satisfy the *Frye* test. See *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923). That test requires a 'showing that the basis of a scientific opinion is generally accepted as reliable within the expert's particular scientific field.' *State v. Shadden,* 290 Kan. 803, 819, 235 P.3d 436 (2010)." *In re Care & Treatment of Girard*, 296 Kan. 372, 372, 294 P.3d 236 (2013).

A party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 435, 6 P.3d 871, *rev. denied* 268 Kan. 885 (1999). At trial, Jones stipulated to the admission of Orton's expert report into evidence and then objected to Orton's testimony for lack of foundation based on Orton's lack of qualification as an expert witness. There was no timely objection by Jones claiming Orton's report and testimony failed the *Frye* test. Orton's testimony was helpful to the district court, and it did not abuse its discretion in qualifying Orton as an expert witness.

8

*Was the evidence sufficient to establish diminished value loss?*

Jones argues the evidence was not sufficient to support the district court's verdict for diminished value loss because, despite Orton's testimony, the diminished value loss of the Ohlmeiers' vehicle is still just a potential future loss and Orton's testimony was mere speculation about what might happen in the future.

To support this claim, Jones argues Orton's report was flawed because it:

- Did not accurately reflect comparable vehicle asking prices;
- Did not take into account all the variables that could lower the vehicle's value; and
- Orton's explanation of the methodology and rationale for figures used was too conjectural and speculative to form a basis for measurement of any such loss.

Here, we review mixed questions of fact and law by applying a bifurcated review standard. The court's factual findings are generally reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon*, 298 Kan. at 1175. When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Gannon*, 298 Kan. at 1175-76.

Damages need not be established with absolute certainty. The court can estimate damages using a reasonable basis for computation and the best evidence available under the circumstances. However, claims for damages that are conjectural and speculative cannot form a sound basis for an award. *Miller v. Johnson*, 295 Kan. 636, 677, 289 P.3d 1098 (2012) (citing *McKissick v. Frye*, 255 Kan. 566, 591, 876 P.2d 1371 [1994]). Neither party directs us to any Kansas caselaw where a claim for diminished value loss has been allowed as a form of property damage, and we have been unable to find one.

At trial, Jones' own witness testified that diminished value loss is real and it is simply a matter of how much an accident affects the value. It is not our job to reweigh the evidence or determine the credibility of witnesses. When the evidence is looked at in the light most favorable to the Ohlmeiers, the evidence was sufficient to support the judgment of $4,185 for the diminished value loss. The admitted evidence included Orton's testimony and written report evaluating a multitude of factors that could affect the Traverse's value; documentation of trade-in offers the Ohlmeiers received after the accident; and approximate preaccident valuations of the Traverse. While it is impossible to establish the diminished value loss with absolute certainty, the number arrived at by the district court was reasonable and supported by substantial competent evidence.

*Does K.S.A. 2014 Supp. 60-2006 authorize judgment for attorney fees?*

Here, Jones argues the district court erred in finding the Ohlmeiers were entitled to attorney fees under K.S.A. 2014 Supp. 60-2006 because inherent diminished value is an economic loss and not property damage. As we consider the Ohlmeiers' claim for diminished value loss, we must determine a definition for diminished value loss. We have been unable to find a definition for diminished value loss in Kansas caselaw, therefore, we turn to Texas caselaw which states:

10

"The term 'diminished-value damages' refers to a loss in the market value of a vehicle allegedly caused by market perceptions that a vehicle involved in an accident, though fully repaired, is worth less than the same vehicle that has never been damaged. See *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 156 (Tex. 2003)." *Dardas v. Fleming, Hovenkamp & Grayson*, 194 S.W.3d 603 (Tex. App. 2006).

We agree with the Texas definition of diminished value loss.

However, before we address the merits of Jones' claim, we must determine if Jones timely appealed this issue to provide us with jurisdiction to consider the attorney fees issue on appeal.

*Do we have jurisdiction on appeal?*

On April 7, 2014, the district court filed its journal entry in which it awarded judgment for $4,185 in diminished value loss and determined the Ohlmeiers were entitled to attorney fees. Over Jones' objection, the district court found that diminished value loss was "property damage" and ordered Jones to pay the Ohlmeiers' attorney fees pursuant to K.S.A. 2014 Supp. 60-2006. The district court ordered the Ohlmeiers to file a motion for attorney fees with the court. On April 11, 2014, Jones filed a motion to alter or amend the judgment. The district court denied Jones' motion on May 1, 2014. Jones filed a notice of appeal of the April 7, 2014, journal entry and all subsequent adverse rulings on May 2, 2014. A journal entry on the Ohlmeiers' motion for attorney fees was filed on May 9, 2014, in which the district court awarded the Ohlmeiers $15,440. Jones did not file a notice of appeal of the May 9, 2014, journal entry.

On appeal, the Ohlmiers argue this panel does not have jurisdiction over the portion of the judgment granting attorney fees because Jones failed to timely appeal the May 9, 2014, journal entry.

11

An appeal may be taken to the appellate court as a matter of right from any final decision. K.S.A. 2014 Supp. 60-2102(a)(4). A "final decision" generally disposes of the entire merits of the case and leaves no further questions or the possibility of future directions or actions by the court. The phrase "final decision" is self-defining and refers to an order that definitely terminates a right or liability involved in an action, or that grants or refuses a remedy as a terminal act in the case. *In re T.S.W.*, 294 Kan. 423, 433, 276 P.3d 133 (2012). An outstanding motion for attorney fees and costs does not affect the finality of a judgment and therefore does not toll the time for appeal. *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 374, 789 P.2d 211 (1990). However, when attorney fees are a component of damages, judgment is final when both liability and damages are determined. *Ramsey v. Lee Builders, Inc.*, 32 Kan. App. 2d 1147, 1153, 95 P.3d 1033 (2004).

Jones is not appealing the amount of the attorney fees; she is appealing the district court's authority to award attorney fees under K.S.A. 2014 Supp. 60-2006. In fact, at oral argument, Jones' counsel said the amount was not being appealed. They were appealing the court's judgment of April 7, 2014, granting attorney fees. The district court ruled that K.S.A. 2014 Supp. 60-2006 was applicable to the case in its April 7, 2014, journal entry. In fact, in its May 9, 2014, journal entry, the district court stated: "This court has previously found that plaintiffs are entitled to attorney's fees under this statutory provision. The issue before the Court now, is what amount constitutes a 'reasonable' fee for this case."

There is no Kansas caselaw directly on point for this issue; however, it appears the Kansas Supreme Court in *Snodgrass* determined that a decision on the merits is distinct from attorney fees taxed as a cost of the action. 246 Kan. at 374 (Although the legislature could explicitly require a trial court to decide the issue of attorney fees as part of the merits of the case, the statutes now treat attorney fees as an element of costs to be awarded to the prevailing party. The legislature has characterized an award of attorney

12

fees as something separate from the merits of the underlying case.). See K.S.A. 2014 Supp. 60-2006(a). Because attorney fees are separate from the merits of the case, the district court's journal entry stating the Ohlmeiers were entitled to attorney fees was not a final order and Jones' appeal was premature.

The timely filing of a notice of appeal ordinarily is jurisdictional. *State v. Hall,* 298 Kan. 978, 986, 319 P.3d 506 (2014). The appeal must be filed within 30 days from "entry of the judgment." K.S.A. 2014 Supp. 60-2103(a). Pursuant to Supreme Court Rule 2.03(a), a premature notice of appeal filed after oral pronouncement of the judgment becomes effective when the journal entry of final judgment is filed:

> "A notice of appeal that complies with K.S.A. 60-2103(b)—filed after a judge of the
> district court announces a judgment to be entered, but before the actual entry of
> judgment—is effective as notice of appeal under K.S.A. 60-2103 if it identifies the
> judgment or part of the judgment from which the appeal is taken with sufficient certainty
> to inform all parties of the rulings to be reviewed on appeal." (2014 Kan. Ct. R. Annot.
> 12).

Jones' premature appeal became effective after the journal entry of final judgment was entered on May 9, 2014. Jones clearly identified she was appealing the authority of the district court to order the payment of Ohlmeiers' attorney fees. Jones appealed after the district court announced the Ohlmeiers were entitled to attorney fees but before the actual journal entry establishing the amount of attorney fees was filed.

*Does K.S.A. 2014 Supp. 60-2006 authorize a judgment for reasonable attorney fees?*

Now that we have determined we have jurisdiction over this portion of the appeal, we proceed to answer the question of whether a diminished value loss qualifies as a property damage loss under K.S.A. 2014 Supp. 60-2006(a) to support a judgment for

13

attorney fees. The district court awarded attorney fees pursuant to K.S.A. 2014 Supp. 60-2006(a) which states:

> "In actions brought for the recovery of *property damages only* of less than $15,000 sustained and caused by the negligent operation of a motor vehicle, the prevailing party shall be allowed reasonable attorney fees which shall be taxed as part of the costs of the action . . . ." (Emphasis added.)

Jones argues there are no Kansas cases directly addressing whether the diminished value loss that a vehicle suffers, even though it has been completely and properly repaired to the satisfaction of the owners, qualifies as property damage only under K.S.A. 2014 Supp. 60-2006(a). *Property damage only* is not defined in K.S.A. 2014 Supp. 60-2006 and appears to be ambiguous as to what qualifies as *property damage only*. We must ascertain the legislative intent behind the use of "property damages only" in the statute.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Cady*, 298 Kan. at 738. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Cady*, 298 Kan. at 738.

The plain language of K.S.A. 2014 Supp. 60-2006(a) states that attorney fees shall be awarded to the prevailing party for actions brought as a result of an automobile

14

accident for property damage only, if the prevailing party also complied with the provisions of K.S.A. 2014 Supp. 60-2006(b). We have been unable to find any Kansas cases applying K.S.A. 2014 Supp. 60-2006(a) to define what property damage only means. The caselaw in other jurisdictions discussing a vehicle's diminished value loss primarily focus on whether specific insurance policies are broad enough to provide coverage for the diminished value loss, not the definition of property damage within a statute that provides a right to attorney fees under certain conditions. See *State Farm Mut. Auto. Ins. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001). Thus, we need to define the term "property damages only" as used in K.S.A. 2014 Supp. 60-2006(a). A panel of this court has previously held:

> "When a plaintiff brings an action for damage to personal property, damages are measured by the cost of repair (plus reasonable compensation for plaintiff's loss of use while the property is being repaired) unless the repair costs exceed the value of the damaged property, in which case the plaintiff's damages are measured by the fair market value of the damaged property immediately before the loss." *Warren v. Heartland Automotive Services, Inc.*, 36 Kan. App. 2d 758, 760, 144 P.3d 73 (2006).

The parties here agree the vehicle damage was fixable and was repaired by Jones to the Ohlmeiers' satisfaction. There is no issue or dispute Jones timely paid for the costs incurred by the Ohlmeiers to repair the Traverse as well as their out-of-pocket expenses for a temporary rental vehicle while the repairs were being completed.

As we look at the legislative history, we see the statute was amended by adding "property" and "only" to the already-existing term in the statute of "damages" to give us the current term of *property damages only*. The legislative history also reflects the change was being made to clarify personal injury loss was not covered under the statute and to encourage the quick resolutions of claims involving *property damage only* when the loss suffered was less than $7,500 and easy to determine. Minutes of Senate Committee on Judiciary, Room 514-S Statehouse at 10 a.m. on March 13, 1995. The statute has

15

subsequently been amended to increase the threshold from $7,500 to $15,000. As another panel of this court said: "The purpose of the statute is said to be 'the promotion of prompt payment of small but well-founded claims and the discouragement of unnecessary litigation of certain automobile negligence cases.' [Citations omitted.]" *Arnold v. Hershberger*, 4 Kan. App. 2d 24, 24, 602 P.2d 120 (1979). If the intent was to promote settlement, then adding diminished value loss into the mix of "property damages only" claims would be counterproductive to promote the prompt payment for repairs to automobiles involved in accidents.

Finally, we note the legislature knows how to pick and choose the words it puts into legislation. In K.S.A. 2014 Supp. 60-258a, the legislature specifically discusses "economic loss" as a type of damage that could be recovered. It did not include that very same verbage in K.S.A. 2014 Supp. 60-2006(a). Here, the legislature specifically used the term "property damages only," and "only" is the adjective in that phrase modifying, limiting, and restricting "property damages." It does not expand it. It places a limit on what is considered property damage. Clearly, the statute refers only to the physical damage to the vehicle and the cost to repair it, not the economic loss claimed through diminished value that will lessen over time as the vehicle ages.

If the legislature intended property damage to be all-inclusive, there would have been no need to limit it by the word "only." The legislature clearly included economic loss as an additional form of damages in K.S.A. 2014 Supp. 60-258a. Similarly, if the legislature had intended to include the economic loss of diminished value in K.S.A. 2014 Supp. 60-2006(a), it would have made a point to delineate it.

K.S.A. 2014 Supp. 60-2006(a) applies to the property damage repair costs—the amount it costs to fix the damage suffered by the vehicle to the satisfaction of the owners—not the "inherent diminished value" lost with owning a vehicle reflecting it was involved in an accident. Therefore, we find diminished value loss does not qualify under

16

the definition of "property damages only" to allow the recovery of the prevailing parties' attorney fees pursuant to K.S.A. 2014 Supp. 60-2006(a).

Affirmed in part and reversed in part.